The Fourth District Appellate Court of the State of Illinois has reconvened. The Honorable Thomas M. Harris presiding. Good morning. This is case number 4-22-0386, People v. William Buck. First, I'd like to have counsel identify themselves. First, for the appellant. Sure. Deborah Lobey from the Exoneration Project on behalf of the appellant, William Buck. Thank you. And for the appellate? Allison Page Brooks on behalf of the people. All right. Thank you. Ms. Lobey, you may proceed with your argument. Thank you. May it please the court. I'd like to focus this morning on the arguments that the lower court aired in dismissing the post-conviction claims regarding the new evidence likely changing the outcome of the suppression hearing and an evidentiary hearing being warranted on actual innocence. I'll rely on the briefs regarding the other arguments, but I'm certainly happy to take questions if the court has specific questions about those other issues. I'd like to begin with the argument that crediting the new evidence presented in the petition is likely to change the outcome of the suppression hearing. Petitioner has been saying since the very beginning that he was violently assaulted and that he only ever parroted back the inculpatory statements that the officers made him say. And this case now presents truly astonishing new evidence that has to be credited and believed at this juncture because we are at second stage proceedings. Detective Palmer has testified about how he and his colleagues used to commit exactly the kinds of abuses and manipulations of custodial statements that they are accused of doing in this case at around the same time of the investigation in this case. What Detective Palmer has admitted to under oath about him and his colleagues is totally consistent with the allegations in this about illegal threats, about denying suspects the right to counsel, about feeding witnesses statements and putting details in for them to include, about abusing suspects, and he talked about doing it, witnessing it, committing the offenses, committing it in front of his other colleague detectives, in front of his higher-ups, and at the instruction of his supervisors. This is incredible evidence. I may interrupt. Please. Good morning. With regards to Detective Palmer's testimony though in the Anderson, Johnson, and Ross's cases. Yes. As far as support in this particular case though as it would relate to matters involving the matter before this court, how does it support the claim when Palmer told the defendant's investigator that he did not have any information that he could provide with regards to this case? I understand that what you're saying about the general comparisons, but what I'm asking is how does that provide any support specifically with regards to this case? Sure. One, what it has to do with is crediting the evidence because we're at second stage. So it's possible in an evidentiary hearing he'll say I have nothing to share, but what this court has to assume is that he would testify in a manner consistent with what he's already said under oath because when he was... Even if he does that counsel, it's not with regards to this specific case and in the matters before this court, in the record, there's evidence that Palmer told the defendant's investigator. That's one of the reasons this had been continued as they wanted information from the investigator that he did not have any information that he could provide with regards to this case. Three answers if I may. The first is there is no sworn testimony from an investigator that that happened. This is an aside that was mentioned in proceedings by counsel who was ultimately fired by Mr. Buck so that he could pursue this pro se. So that is not evidence in this case, merely an aside. But secondly, what Detective Palmer said under oath that needs to be credited is something that indicates that it happened universally, not just in that case. And if I may, this comes from the record at page 1865. He said, if she's going to keep going down this road, I'll start naming names, giving dates, giving case numbers of a lot of illegal stuff that I witnessed and took part of gladly. I'm here to second stage, that evidence has to be credited and inferences have to be drawn in petitioner's favor. The inference from that is that in this case, as in the other cases, he likely was doing the same kind of misconduct as was his colleagues. So that's the inference that we should draw is that he would testify similarly in this case because he told us he would in this other case. But even if he were to stand up in this case at the evidentiary hearing and deny it, his admissions are still extremely relevant pattern and practice evidence to impeach any denial. So if he were to say, oh, no, no, we only did that in the Anderson case. And although in the Anderson case, he talked about a bunch of other cases. But if you were to say it didn't happen in Mr. Buck's case in particular, that's still pattern and practice evidence. And in an evidentiary hearing, it could change the outcome of a suppression hearing when you have testimony about all the other cases in which Detective Palmer, Detective Randall, Detective Lindmark and all these other officers were committing this exact same misconduct. So, Ms. Lovey, may I interrupt you for a moment? When was the interrogation in this case compared or interrogations in this case as compared to the interrogations in those other cases that the interrogation in this case occurred nine months before the one in the Anderson, Johnson and Ross case? And by the time you get to the Anderson, Johnson and Ross case, Palmer is talking about how guilty he feels, you know, how this was stuff that was going on regularly. He was so emboldened. He describes hitting a witness in the state's attorney's office, punching him in the head in the state's attorney office to get him into line. And he describes making the sorts of threats that were made in this case in nearly nine months later. And if you look at the pattern and practice cases, and there are a lot and we cite a lot in our brief, you know, the cases talk about even one similar incident being enough to impeach the officers at a suppression hearing. But Ms. Lovey, are there any cases similar to this Well, let me back up and ask this first question. Did Detective Palmer testify to any cases in which the interrogations occurred that were coercive involved any of the matters of misconduct that you've already mentioned that predated Mr. Buck's interrogation? Well, he talks about he doesn't in the Johnson case, he's asked about the Johnson case. So he doesn't talk, he doesn't get into the specifics. But that's why. So he doesn't. So in answer your question, he doesn't talk about any other cases besides this one that's nine months later. Okay, so is it important? These other cases? So now the I'm talking about the reported appellate court decisions. Do all of those cases involve interrogations involving coercive methods that predated the subject interrogation? Well, if I may, here's a very important distinction, which is in the pattern and practice cases, they're talking about post evidentiary hearing where they can explore where did this abuse happen? Where was the pattern in practice? We're at a pre evidentiary hearing, we're just asking, can we have an evidentiary hearing where we can ask Detective Palmer? Hey, did it happen earlier? I understand. But just simply for purposes of my question here, do any of those cases involve conduct that only post dated the subject interrogation? I don't recall that any of them talking about I don't recall, Your Honor, but what I was when we're talking about pattern, the stat and established pattern, that almost by definition would seem that that pattern was established in cases that predated the subject interrogation. Would you agree? Well, somewhat two things, if I may, Your Honor, one is that the exploration of the pattern has to occur. And so the question is, is there enough here to even ask Palmer about when the pattern began? And I would say certainly him alluding to the long and extensive pattern of these officers certainly raises the question of, hey, did it happen nine months earlier as well? So that's my first answer. My second answer is, again, what happened in the Johnson case was so egregious and so emboldened that it strongly suggests that it happened in the pattern case. I mean, it certainly strongly suggests that it happened predating Johnson and Anderson, that this was something that they were doing familiarly. And third, and this is really important, Your Honor, we have indications in this very case that this pattern took place here. We don't just have Palmer's evidence. We have testimony from Catherine Torres, who's an uninvolved bystander, saying it happened in this case. She saw 15 officers violently kick and beat up petitioner during his arrest while he was on the ground in handcuffs. We have Lakeisha Howard's unrebutted testimony that the officers threatened to take her child with DCFS if she didn't testify the way they wanted her to. And that's exactly the pattern that Palmer is describing. So when Palmer talks about what he was doing, we have witnesses in this very case saying that that's what happened. We have Patrick Johnson's unrebutted testimony that he was threatened. We have Vincent Holmes talking about being threatened during his interrogation. All of that testimony has to be credited for second stage. And we have petitioner's testimony that he was abused in this case. So if you observe that we're at second stage proceedings, you have evidence that what Palmer is describing happened a mere nine months later was also happening in this case. So we have to credit it for second stage. And then the question that you're asking, I believe, is really one for the third stage after there's been an evidentiary hearing. But when you credit it, you have to assume that it happened here. Okay. Thank you. Okay. I want to make sure. Does that answer the question? Does that answer your question? You answered it. Thank you. Okay. Great. Since we're discussing the other cases, one question I have is why should the court consider the factual information from John Horton's case when that information was not included as an attachment to the defendant's amended post-conviction petition? Well, as your Honor knows, this case has lingered for 17 years where Mr. Buck did not have counsel. He had to proceed pro se because counsel was not advancing this case. That is an egregiously long time. He has done that- Counsel, let's clarify that point if you're going to make this statement. And this will lead me to a couple other issues. I mean, first of all, he had counsel. He elected to proceed pro se. And your statement is that he did so because they weren't advancing the case. But why should we not hold the defendant responsible for many of these delays? He was requesting his attorneys to investigate various claims, interview witnesses, waiting on the investigator. And in fact, two of the attorneys, didn't they send him amended drafts and he would not accept the amendment. So, you can address the delays and then you can answer my question on the Horton case. Well, and respectfully, I don't want to use my time with delays significantly. The Supreme Court has called 11 and a half years unconscionable. Mr. Buck tried to get his case moving. But regardless, the fact of the matter is that the Horton materials, it's a court order. It's something that the court ordinarily takes judicial notice of. And we're asking the court to take judicial notice of a court order. It simply adds to an enormous pile of evidence that can be credited here. Whether or not the court wants to take judicial notice of the Certificate of Innocence in the Horton case. And just to remind the court, that's the case where this court found, or I'm sorry, where the court found, awarded a Certificate of Innocence based on these same officers' misconduct. It's evidence that suggests, again, what we'll find in an evidentiary hearing, which is sufficient evidence. This court can take judicial notice, but even if it doesn't, there is more than enough evidence here that has to be credited at second stage to necessitate an evidentiary hearing. And then at the evidentiary hearing, the court can make the decision about what it wants to credit, what it doesn't, you know, and the chips will fall as they may, with regards to the evidence from Horton or not. Ms. Lundy, the People v. Galvin, the first district case from 2019. Do you believe that that's on all fours, except for the fact that that involved the appellate court reviewing the third stage evidentiary hearing denial by the circuit court? But otherwise, do you believe that the facts are very similar to this case? Um, you know, the holding in Galvin was that the new evidence weighs against the original evidence, that the suppression hearing would have come out differently if you'd had that information. That's what we're arguing here. We're arguing that the suppression hearing would look very different if Palmer were able to testify that the officers were routinely doing this. So, Galvin is one of many that's very similar to what we're asking here, along with Wuerl, Wilson, Plummer, Harris, King, Cannon, Taylor, Mitchell, Montanez. They're a slew of pattern and practice cases, and in each of them, some of them they say even one incident is enough to prove the pattern in practice, but in each of them they're saying, you know, the suppression hearing would look different if you had this new evidence about these officers' routine misconduct. And in Galvin, uh, uh, the, that case actually went to a third stage evidentiary hearing. The trial court denied the, uh, uh, post-conviction petition, and the first district, uh, uh, uh, reversed, uh, and said that the new suppression hearing was required. Is that right? I believe so, Your Honor, yes. Okay. Here, uh, it being a second stage, uh, dismissal, what you're saying is, is that, uh, there's, there's enough there with, uh, uh, Palmer's testimony to send it back for a third stage, uh, uh, hearing and have, um, uh, the attorneys explore, uh, uh, this issue as to whether or not, uh, there's a systematic and, uh, methodical interrogation abuse? Well, certainly that's one of the things I'm saying, but I'm saying, I think you're holding us to an even harder burden than we need to, um, because I think, you know, what Palmer's testimony could, Palmer's testimony could prove a pattern in practice, and then it would fall into sort of the Galvin camp of cases, but it could also just shift the, the, the, the credibility way, you know, the court came in at the suppression hearing and heard all the officers say, oh no, we didn't abuse him, we didn't abuse him, we didn't abuse him, and decided the petitioner was a liar when he said he was abused. That credibility determination could, could go the other way when you have Palmer saying, yeah, we used to beat people up all the time, and, and I personally, even though it's against my criminal interests, it's against my civil liability interests, I'll tell you, I used to do that, and I feel guilty about all the evil things I used to do because I did that regularly. That credibility determination could go the other way there, and then the chips could fall very differently at a suppression hearing. Um, so, you know, that's why this claim has been presented in a lot of different ways. You can view it through the Brady lens, you can view it through a due process pattern and practice lens, but you can also view it through the, the suppression hearing is likely to turn out different if you have Palmer testifying, and testimony like the neighbor, Catherine Torres, who saw, you know, 15 officers pounce on Mr. Buck, that testimony is going to be viewed differently. Mr., Mr. Buck's testimony is going to be viewed distantly, differently. Holmes's testimony about the abuse would be viewed differently, and for second stage proceedings, this court has to assume that to be true. It has to assume, okay, let's credit Mr. Buck, let's credit Mr. Holmes, let's credit Catherine Torres, let's credit Palmer's testimony that we have under oath, and then is that enough to warrant an evidentiary hearing? But it's certainly enough to, to, to, to warrant that hearing. I'm sorry, were you going to say something, Justice Harris? No, I was just thanking you for answering the question. Okay. Um, if, if I may ask, in your brief, you argue repeatedly that the defendant's amended petition should be given a very generous reading because he chose to represent himself during the second stage proceedings in the trial court. It appears to me that many of the cases that you cite only involve first stage proceedings. Um, before the defendant was proceeded, proceeded pro se, the trial court admonished him that he would be treated the same as if, as an attorney, if he chose to represent himself in those proceedings. Do you cite any cases that support your argument that we should review his petition liberally during the second stage of pro se? Respectfully, Your Honor, my argument is that when he had to wait seven years for nothing to happen, that it's not the sort of choice that should be held against him. So I'm asking for the court to view it as one would, were he a pro se litigant. If the court, uh, chooses not to, I think he still has a crushingly prevailing petition here. Um, but I think that is yet another, that is a helpful lens to the extent it is. I see my time is dwindling, so I would love to, to address actual innocence if I may. Um, considering the now available evidence, new and old together, there's more than enough to warrant an evidentiary hearing on petitioner's innocence as well. Because Palmer's testimony here is really a trifecta. It impugns petitioner's confession, it impugns Holmes's inculpatory testimony, and it undermines all of the physical evidence in the case. Because without petitioner's statement, there's nothing to tie these random physical items that were supposedly found somewhere in the neighborhood. We don't know where, we don't know when, we don't know by whom, but the asthma inhaler, the keys were supposedly found. What makes them significant evidence is petitioner's statement. His statement is the only that ties any physical evidence to the crime, and without his statement, that evidence falls away too. Coupled with that, you have Marcus Stone's affidavit that Vincent Holmes admitted to committing the crime. That alone is the sort of evidence that would warrant an evidentiary hearing on an actual innocence claim. When you view it in the context of all of the other evidence, um, in this case, there's undoubtedly a need for an evidentiary hearing on the innocence claim as well. I see that my time has elapsed, so happy to take questions if you want, or I'll reserve the rest for rebuttal. All right, I don't see any questions. Ms. Lovey, you will have time in rebuttal. Thank you. I proceed with your argument. Thank you, Your Honors. May it please the Court and Counsel, um, I'm not sure what the defendant's position is, uh, currently on their request for a new trial out of this appeal, because I noticed that was seemingly heavily argued for in their opening brief, and, and then they turn around and accuse the state of somehow improperly arguing the merits of their, um, petition, and they're arguing the facts of the case in sort of response to the, the fact that the defendants are requesting a new trial out of this second stage post-conviction dismissal appeal. Um, so I'm not sure if the defendants are still trying to do that, but a lot of the state's response is, in fact, directed towards their attempt to request that relief. Um, so for example, they say it's improper for the state to have cited the record, which contains the photos of the defendant, um, his face and his unclosed torso that does not depict the, uh, that doesn't support, it actually refutes the, the claims that he was physically abused in custody. Um, so after he's interrogated, um, by Forrester and Redman, he is taken to jail, and then later he asked to speak with the police, um, so that he is brought back out for more questioning. Um, and then at some point he, he tells, uh, that he was present. He tells Deputy Chief Iris Sparrow that he was present. Um, I'm not sure also where the defense keeps citing that somehow, um, it was a different, uh, detective, um, who was the person who first elicited defendant's admission to being present at the scene. Um, someone who was, in another case, uh, I think the Anderson case, a supervisor of Detective Palmer, um, but that's what's actually Detective Chief Iris Sparrow established that the defendant was present at the scene, and then brings in, um, Paragis and Booker to elicit the more defendants and evidence of defendants involvement in the actual shooting. Um, so the fact that they're relying heavily on Detective Palmer, who it appears his involvement in this particular case was limited to being one of the dozen or so officers involved in the arrest, um, doesn't seem to be that they can say that this, uh, that his own, like, Palmer's admissions of what he did in one case, the Anderson case, somehow constitutes evidence of pattern and practice. For example, the Tyler case cited in the state's brief, where a person who was actually involved in an interrogation, um, they cited, uh, dozens and dozens and dozens of claims of the actual list of cases and stuff where claims have been made about physical abuse by that particular interrogator. But here, there's one case, a person who wasn't even involved in the interrogations, um, and so they were relying what they admit as inferences from that, uh, to request an evidentiary hearing. A witness who said he would gladly provide names and details and said he had it all documented, but when they send their investigator to talk to him, uh, they, they find out it's nothing, uh, that he doesn't have anything that he can provide to this particular case. Um, On his books, uh, would it matter that, uh, at an evidentiary hearing, uh, Detective Palmer would be under oath? Well, it's kind of interesting. The, the quote they cite, they say Detective Palmer testified this in sworn testimony, but what really happened at that hearing, although he was on the witness oath, he turned to the judge and asked if he needed an attorney. And the judge says, well, why is that? And then he goes on to this sort of like unsolicited, um, thing about, about all of what he knows and can say about other cases perhaps. Um, but that wasn't really sworn testimony in response to questions from a party that, or that was something he interjected on his own. So the fact that he was coincidentally on the witness stand under oath doesn't necessarily make that sworn testimony. Um, so I guess what the state is getting at here is that the defendant had an opportunity to obtain an actual affidavit from Detective Palmer. Um, because it's important here to understand that, that a petition, a post-commissioned petition needs evidentiary support and lacking that evidentiary support. Um, what the defendants are trying to allege here as this sort of transcript for the Anderson case and sworn or not, those statements are there, but they don't say anything about this case. They don't say really much specifically about what specific interrogators were involved in defendant's case did. And when you get to the exoneration projects brief, it's that they have a routine, like sort of standard practice that they would do in every case of coercing, physically coercing suspects into false confessions. So if this court should sort of like strip away the hyperbole from the defendant's brief, look at the actual petition and the attachments and engage in the Genova review, the state would trust this court to, to reach a correct decision, um, on whether the defendant's claims have stated the, um, as made a substantial showing of a constitutional violation that would merit an evidentiary hearing. That's the standard they need to meet. And with respect to the Horton case, it's not in their petition. It's not in the trial court record courts review. They, they rule on whether the petition and its attachments where it's made a substantial showing of constitutional violation. So I'm not sure how anything, the Horton case has anything to do with whether the petition stated a constitutional violation, because that's not part of it. Um, so to the extent that you're trying to interject like judicial findings of unrelated case, um, they needed to make a motion for judicial notice, not just put this in their appendix without any sort of motion. And if any such emotion, um, the state would have objected to unless they had specifically said, here's exactly what's relevant and why it's necessary for the court to take judicial notice of certain specific things from the Horton case. Um, so just generally throwing something like Horton into an appendix without emotion for judicial notice, without identifying what facts are relevant and why, uh, just seems to be an improper way to conduct appellate practice. And it's like the state has mentioned in this brief about several other aspects of the defendant's brief, uh, would hinder this court's review by interjecting argument in inner inappropriate places and not citing the record during argument. Um, but this case has lasted long enough. The state did not move for, uh, to strike the brief, but, um, just the trust that this court can make in a de novo review of the actual petition innocent attachments and determine whether an evidentiary hearing is warranted. And with respect to the defense request for a new trial, that's just the cases they would rely on are cases where facts that are important to be adjudicated at evidentiary hearing were already conclusively established. For example, states had already admitted the key facts in those cases that an evidentiary hearing would have otherwise been held and therefore an evidentiary hearing wasn't warranted here. There's no, there's no admissions from the state that would make, that would take away the name. The defendants need their burden to prove their petition by preponderance of evidence at an evidentiary hearing. This is unfortunate how long it took to get this case, including a year of COVID delay, two years for prosecutors to get their motion to dismiss in which the other astounding part of this whole case is a 50 page brief by very esteemed attorneys. There's a very short one page order by the court finding almost all of the claims forfeited and nearly a page of their opening brief says anything about the basis of the trial court's ruling that almost all their claims are forfeited. And so essentially the state never had an opportunity to answer the petition because this case never went past the motion to dismiss stage. So the fact that the defendants on their opening brief lost their only opportunity to challenge the basis of the trial court's judgment, which is that the vast majority of these claims are forfeited for not having been raised on direct appeal. And so the defendants don't have an opportunity to try to, I mean, they could have done it, but they didn't. So it's not the state's burden or this court's burden to try to understand why they may not be forfeited. It's one word saying that somehow the basis of the trial court's ruling was meritless or something doesn't meet their briefing standards. So the fact that they had that opportunity to challenge the trial court's basis. So even on that just ground alone, I know it's very technical, but the defendant way of counsel, but now he's got esteemed counsel on appeal and they couldn't even do the very basic part of their job. I'm sorry, but to just put in their argument about why the trial court's ruling was wrong, it just seems to be a very poor failure of appellate briefing to not do that very basic thing. And it's not the state's burden in their brief to try to justify the ruling without any attempt by the defendant to sort of like show why that ruling is wrong. In regards to the actual innocence claim, can you comment on Mr. Holmes's reason for sending back for a third stage evidentiary hearing? Yes, I can do that, Your Honor. Well, a couple of things is the first thing is kind of a quirk of the case, which isn't typical for this sort of case is that Holmes himself has an affidavit in the record provided by the defense that says that he knows nothing about this case. So they actually have competing affidavits from the same, well, not from the same witness because the one witness, Marcus Stones, says that this is like a hearsay affidavit. So it's not from Vincent Holmes himself. But Vincent Holmes himself says he knows nothing about the case. So the idea that somehow Marcus Stones affidavit has to be taken as true when Vincent Holmes affidavit actually has to be taken as true as well. And they say basically opposite things. So it seems like that particular rule is not really capable of being applied because they both can't be taken the true at same time. The other thing is even if Holmes didn't testify in this case, for example, like because if they say that, you know, well, my point is their argument is without his confession, all this evidence, the physical evidence, excuse me, the physical evidence that is circumstantial wouldn't be connected to the defendant somehow as an actual shooter. But yet they also overlook the 14-year-old Jerry Wilkins, the cousin, young cousin of the defendant's girlfriend. After the shooting goes, hides out with his girlfriend, Jerry Wilkins is there and in a brief interchange, the defendant admits there that he was involved in the shooting. So it's not that the police confession is the only item of the inculpatory statement the defendant made. He also confessed to 14-year-old Jerry Wilkins. So that's another important part of the but also the case was overwhelming. If the defendant cannot get his confession overturned, especially the fact with the confession to the police, the physical evidence included the inhaler, the key to the apartment that was loaned out by someone else. The fact that defendant had lost his last money in the dice game was going to go hit a lick. The fact he asked for a screwdriver, we're going to break into cars, steal cars. It was seen walking to Hoban where the scene of the shooting was and it comes back, the discarded clothing, the hoodie. So there's a lot of things going on in this case. What about the gunshot residue found on Holmes's pants? Well, there was never, the scientists provided conflicting information as whether there was gunshot residue in Holmes's pants. I believe it was initially said yes, and then no, when it was clarified whose pants they were. So that could have been just simply a misunderstanding. Identification as to the owner of the pants have to do with whether or not gunshot residue was actually present. The point about that is that there could have been confusion that was cleared up on to whether that particular item of evidence had gunshot residue. So I'm not sure that the record contains the actual test results, like a report from the, so they're relying on oral testimony that was corrected during the course of that scientist's testimony. And that was corrected, so I'm not sure that that conclusively establishes that there was scientific fact gunshot residue on Holmes's pants. And if Holmes and defendant were both at the scene, that doesn't mean that the defendant wasn't there or he wasn't the shooter. But the other thing about that is, oh yeah, the defendant, one of the things in the defense case that seems kind of odd is that they try to establish that the victim, an off-duty detective, was somehow doing something in a improper, like in his marriage or something, and his car was facing the wrong way. There's like a late night call, they're having a work done on a carpet, and they had to go, and then, but the idea is, one of the things I think the defendant said in his testimony is about how this person like turned around, and that's how they knew he was like a cop, because they're out like breaking into cars, and this off-duty detective like sees that and turns around and goes somewhere that he wouldn't have otherwise gone, because he's, although off-duty, still really technically, cops are always on duty. They see a crime in progress or something they think they should investigate, even though he's not technically on duty at the time, and then gets himself murdered because, you know, of his involvement in investigating this. So it seems like that positioning actually buttresses the circumstances of this crime, that the defendant was out trying to break into cars, and that the victim saw that and tried to turn around and investigate, and that's how he got murdered. Not somehow a motive for the police to, you know, protect this person's sort of scandal or so, to find a perpetrator and to pin it on is the defendant's theory, which seems ludicrous. But the other last thing I've mentioned before I'm done is the Galvan case. I think on page, paragraph 71, they talk about seven witnesses who testified that they're all abused by Detective Switsky during their interrogations. So here, there's no witnesses coming in to testify that they were abused during interrogation by Forrester, Redmond, Arsperow, Peragis, or Booker. So it seems to be a very distinguishable case. So for that reason, the petition itself is insufficient to merit even an evidentiary hearing, let alone a new trial outright. For those reasons, the state requests this court to affirm. Thank you. Okay, thank you, Ms. Brooks. Ms. Lovey, rebuttal. Yes, I'd like to start with the pants because I think they underscore the evidence in this case that exactly what Detective Palmer told us. There was something weird going on in this case where the officers were working backwards. What that testimony about the gunshot residue was, was the scientist testified that Holmes' pants had residue on the waistband and the pocket, suggesting he was the shooter, consistent with Marcus Stone's affidavit that Holmes has confessed to being the shooter. She actually had to, after she testified, claim that she went back to the lab, retested the pants, and they recalled her on another day so that they could get her to rescind that testimony because it undermined their theory of the case. There is serious evidence here in support of actual innocence. And the fact that there might be something from Holmes somewhere in the record where he self-servingly denies his guilt is not enough to get them over the standards. It's second stage here where the evidence has to be reviewed in favor of Mr. Buck, in favor of the petitioner. You have Holmes with gunshot residue on his pants confessing to Marcus Stone that he was the murderer. That's enough to get you a hearing on actual innocence. How do you address the fact that those are, if you will, competing affidavits where you have the, if we are to take those as true, there is an inherent inconsistency in the two. Wouldn't you agree? Well, this is on all fours with the Supreme Court discussion and the distinction of when you look at the Robinson case. You have to, at second stage, draw the credibility and the findings, the inferences, in Mr. Buck's favor. And you have to, at this stage, look at it. And so the fact that there was a self-serving denial where somebody says, oh, I don't know anything about it, that is not enough to overcome a confession, I committed this crime, particularly when you're drawing the inferences and you're crediting the evidence at second stage. Again, at an evidentiary hearing, things could shake out differently. But the question here is just, is there enough to have an evidentiary hearing? And you have the state's chief best witness confessing to committing the crime. You have gunshot residue on his pants. That is enough to get a hearing, at which point, maybe he gets impeached with his affidavit, or maybe his affidavit somehow proves helpful to the state where he says, I know nothing about it. But that happens all the time in criminal cases. People deny knowing something, and then later they confess, or there's other evidence that you could overcome that the Supreme Court was talking about in the case cited by the state. For a follow-up question on the statements made by Ms. Brooks, would you agree that Detective Palmer was not one of the officers that interrogated the defendant in this case? Is that accurate? He was involved. He was the arresting officer, but he was not the interrogating officer. But his testimony is still important for a number of reasons. One is that he does implicate the interrogating officers, and particularly, he implicates Lindmark. And secondly, again, his testimony shifts the credibility assessment. If he were to testify in petitioner's favor about what happened at the arrest, so the court would then be faced with petitioners substantiated by a detective saying, they beat me up at my arrest. No longer would what happened during the arrest be viewed through this lens of the court thinks the petitioner is a liar. Now the petitioner is not a liar. He is telling the truth about what happened at his arrest. And then you start asking the questions about what the interrogating officers do without already this assumption the petitioner has been lying all along. It shifts the balance of the credibility assessment. And so it's super important, in addition to the fact that Palmer would impugn the other officers, which he has said, if you credit his testimony. Final question. The defendant did not make any admissions, if you will. And in the initial discussions, it was after the defendant requested to speak with the officers again. Is that accurate? It was later in the interrogation. I mean, that's all you're again, crediting the officers versions of what happens, not petitioners version of what happened. And the officer's version of what happened, it happened later, like you said. Is the defendant suggesting there was not a break? The defendant is suggesting that he didn't ask for, that he didn't suddenly say, I want to confess. He's denied all this. He testified for over 300 pages at the suppression hearing. And that's testimony that this court has to credit for second stage proceedings. And in that testimony, he denies it going down the way the officers does. So we should not start with the approach of the officer's version of what happened. We have to start with Mr. Buck's version of what happened. And then we add in Palmer's testimony about the abuses that would lead a trier of the fact to believe that Mr. Buck was telling the truth when he talked about getting abused in the beginning. And then that, like I said, shifts the whole credibility determination. And that's why we need to have an evidence that happened in this case. And he's never been asked under oath about this case, but his testimony absolutely was sworn and under oath. I'm not sure what the state was saying about it not counting because he offered it. He was on the stand under oath when he made these admissions that were dramatically against his own personal and criminal interests, that they were abusing suspects. And that's the testimony that needs to get credited here. Were there additional questions or shall I wrap up? I saw my time. You are out of time. Okay. I would just ask that the court at a bare minimum allow for an evidentiary hearing where these claims can be fleshed out. When the evidence is properly credited, I think there's no other result. So thank you very much for your time. Okay. Thank you, Ms. Levy. Thank you, Ms. Brooks. The court will take the case under advisement and will issue a written decision.